**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

TINA MURPHY and MICHAEL GAVLICK,

                      Plaintiffs,

        -against-

CITY OF NEW YORK, RICARDO MANTILLA, Individually, SANTOS LIZ, Individually, VISAR MARKU, Individually, RAFAEL TATIS, Individually, UNDERCOVER POLICE OFFICER 276, Individually, JANE DOE 1, and JOHN DOE 1 through 2, Individually, (the names Jane and John Doe being fictitious, as the true names are presently unknown),

                      Defendants.

</td><td>

**COMPLAINT**

16-CV-5615

**JURY TRIAL DEMANDED**

</td></tr>
</table>

Plaintiffs TINA MURPHY and MICHAEL GAVLICK, by their attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs bring this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of their civil rights, which are secured by these statutes and the United States Constitution.

## JURISDICTION

2.    Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.    This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiffs respectfully demand a trial by jury on all issues in this matter pursuant

to Federal Rule of Civil Procedure 38(b).

## PARTIES

6.      Plaintiff TINA MURPHY is a forty-one (41) year-old female and United States

Citizen who resides in Hanover Township, Pennsylvania.

7.      Plaintiff MICHAEL GAVLICK is a thirty-five (35) year-old male and United

States Citizen who resides in Tunkhannock, Pennsylvania.

8.      Defendant CITY OF NEW YORK was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant CITY OF NEW YORK maintains the New York City Police

Department ("NYPD"), a duly authorized public authority and/or police department, authorized

to perform all functions of a police department as per the applicable sections of the

aforementioned municipal corporation, the CITY OF NEW YORK.

10.     At all times hereinafter mentioned, the individually named defendant RICARDO

MANTILLA, Shield No. 00523, was a duly sworn police officer of the NYPD, and was acting

under the supervision of the NYPD and according to his official duties.

11.     At all times hereinafter mentioned, the individually named defendant SANTOS

LIZ, Shield No. 02656, was a duly sworn police officer of the NYPD, and was acting under the

supervision of the NYPD and according to his official duties.

2

12.     At all times hereinafter mentioned, the individually named defendant VISAR MARKU, Shield No. 02735, was a duly sworn police officer and sergeant of the NYPD, and was acting under the supervision of the NYPD, according to his official duties, and supervising the other individually named defendants.

13.     At all times hereinafter mentioned, the individually named defendant RAFAEL TATIS, Shield No. 00112, was a duly sworn police officer of the NYPD, and was acting under the supervision of the NYPD and according to his official duties.

14.     At all times hereinafter mentioned, the individually named defendant UNDERCOVER POLICE OFFICER 276, Shield No. unknown, was a duly sworn police officer of the NYPD, and was acting under the supervision of the NYPD and according to his official duties.

15.     At all times hereinafter mentioned, the individually named defendants JANE DOE 1, Shield No. unknown, and JOHN DOE 1 through 2, Shield Nos. unknown, were duly sworn police officers of the NYPD, and were acting under the supervision of the NYPD and according to their official duties.

16.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the CITY OF NEW YORK.

17.     Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

"'I thought I was not naïve regarding the reality of narcotics enforcement, but even this court was shocked, not only by the seeming pervasive scope of misconduct, but even more distressingly by the seeming casualness by which such conduct is deployed.'" – New York Supreme Court Justice Gustin L. Reichbach

"The case against Detective Arbeeny was rooted in a far larger tale of corruption in Police Department drug units: several narcotics officers in Brooklyn have been caught mishandling drugs they seized as evidence, and hundreds of potentially tainted drug cases have been dismissed. The city has made payments to settle civil suits over wrongful incarcerations. . . .  One former detective, Stephen Anderson, who did not know the defendant, testified that <u>officers in those units often planted drugs on innocent people</u>."

Tim Stellohnov, <u>Detective Is Found Guilty of Planting Drugs</u>, N.Y. TIMES, Nov. 1, 2011 (emphasis added).

18.    On November 7, 2015, between 7:15 p.m. and 8:00 p.m., Plaintiff TINA MURPHY ("Ms. Murphy") and Plaintiff MICHAEL GAVLICK ("Mr. Gavlick") were lawfully present in the vicinity of 490 8th Avenue, New York, New York, when Defendants Ricardo Mantilla, Santos Liz, Visar Marku, Rafael Tatis, Undercover Police Officer 276, and John Doe 1 through 2, without any lawful justification whatsoever, unlawfully arrested them, assaulted them, searched them, and imprisoned them.

19.    Before, during, and after the defendants arrested and assaulted them, Ms. Murphy and Mr. Gavlick committed no crime or offense.  Likewise, at all times relevant to these events, Ms. Murphy and Mr. Gavlick were not behaving in a manner that would suggest to any reasonable police officer that they had done anything unlawful.

TINA MURPHY AND MICHAEL GAVLICK

20.    Ms. Murphy is a 41-year-old mother of two adult children, a 22-year-old daughter and a 19-year-old son.  She has worked for Tri State Financial, in Wilkes-Barre, Pennsylvania, for 22 years. She currently manages Tri State Financial's bill collection department.

4

21.     Ms. Murphy graduated from Coughlin High School, in Wilkes-Barre, with a high school diploma, and was recognized as "Who's Who Among American High School Students" and also received the President's Education Award.  She then studied nursing for a year at Misericordia University, a Catholic co-educational liberal arts university in Dallas, Pennsylvania.

22.     Prior to this incident, Ms. Murphy has never been arrested.

23.     Mr. Gavlick is 35-years-old, and does plumbing, heating, and air-conditioning installation and repair for Yenason Mechanical, in Wilkes-Barre, Pennsylvania. He has worked for Yenason Mechanical for almost 10 years.

24.     Mr. Gavlick graduated from Hanover Area Junior Senior High School, in Wilkes-Barre, Pennsylvania, and received his high school diploma.  At Hanover, he was a star Football player and named MVP.

25.     After he graduated from high school, Mr. Gavlick worked as a forklift operator at Sears Warehouse, in Wilkes-Barre, and then enrolled in Luzern County Community College, in Nanticoke, Pennsylvania, and studied theory, design, and installation of warm air heating and air conditioning systems.

26.     Prior to this incident, Mr. Gavlick had no criminal record or violation record of any kind.

27.     Ms. Murphy and Mr. Gavlick have been in a committed relationship since May of 2015.

**PLAINTIFFS TOOK A TRIP TO THE BIG CITY**

28.     About a week or two prior to this incident, Plaintiffs won two tickets, through a contest on Facebook, to see Dead & Company perform live at Madison Square Garden ("MSG"), in New York County, on November 7, 2015.

5

29.     Dead & Company is a band that consists of former Grateful Dead members Bob Weir, Mickey Hart, and Bill Kreutzmann, along with John Mayer, Oteil Burbridge, and Jeff Chimenti.  DEAD & COMPANY, http://www.deadandcompany.com (last visited July 14, 2016).

30.     As fans of Dead & Company, Ms. Murphy and Mr. Gavlick were ecstatic that they won these tickets and, as an added benefit, were taking a trip to New York City.  Indeed, they were especially excited because Ms. Murphy's birthday is November 9th, and this trip was to serve as a birthday celebration of sorts.

31.     On November 7, 2015, Plaintiffs drove from Pennsylvania to New Jersey.  They had booked a hotel room for the night at Red Roof Inn, in Secaucus, New Jersey.

32.     Around 4:00 p.m., Ms. Murphy and Mr. Gavlick checked into the Red Roof Inn and then took a cab to the New Jersey Transit train station.  From the New Jersey station, they took a train to Manhattan's Penn Station.

**PLAINTIFFS ARRIVED AT MADISON SQUARE GARDEN TO SEE DEAD & COMPANY**

33.     Plaintiffs arrived at Manhattan's Penn Station at around 6:00 p.m., exited the station, and walked to a nearby restaurant and bar for food and drinks before the concert.

34.     Upon eating, at around 7:15 p.m., Ms. Murphy and Mr. Gavlick left the restaurant and went to MSG's Will Call window and obtained their concert tickets.

35.     The concert began at 7:30 p.m.; and, with a roughly 15-minute window to spare, Plaintiffs walked outside of MSG to smoke a cigarette.

36.     There were numerous concertgoers outside of MSG and around the surrounding area.

37.     As the concert time neared, Plaintiffs became more excited to see Dead & Company, and they were elated to be in Manhattan to do so while also celebrating Ms. Murphy's

coming birthday.  Indeed, Mr. Gavlick began asking random people if any of them knew where he could buy Ms. Murphy a flower for her birthday.  He explained that they were visiting from out of town.

38.     A number of putative concertgoers in the area responded to Mr. Gavlick that they were also visiting the city to see Dead & Company and did not know where he could purchase a flower for Ms. Murphy.

39.     Then, upon information and belief, Derrick Taylor approached Mr. Gavlick and explained that he was from the area and knew where Mr. Gavlick could buy Ms. Murphy a flower.  Plaintiffs had never before seen or met Mr. Taylor or anyone else who was outside of MSG that night.

40.     Mr. Taylor told Mr. Gavlick that there was a deli that sold flowers very close by.  Mr. Gavlick thanked him for the information but stated it had to be close by because they wanted to head into the concert soon.  Mr. Taylor informed Mr. Gavlick that the deli was about a block away and that he would show him where it was located.

DEFENDANTS FALSELY ARRESTED AND ASSAULTED PLAINTIFFS

41.     Appreciative, Mr. Gavlick and Ms. Murphy followed Mr. Taylor toward the deli that sold flowers, but Mr. Gavlick did not get very far when, upon information and belief, Defendant Visar Marku, who was in plain clothes, tackled him from behind.

42.     Upon being tackled to the concrete, Mr. Gavlick screamed to Ms. Murphy to call the police because he had no idea Defendant Marku was a police officer.  Immediately thereafter, Defendants Rafeal Tatis, Santos Liz, and John Doe 1, who were also in plain clothes, assaulted Mr. Gavlick.

43.     One of the defendants had his knee on the side of Mr. Gavlick's face while it was

pinned to the concrete ground; another defendant had his knees on Mr. Gavlick's back; and the other defendant had his knee on Mr. Gavlick's leg.

44.     At that moment, one of the defendants informed Mr. Gavlick that he was under arrest for buying drugs and then rear-handcuffed him.

45.     As Defendant Marku tackled Mr. Gavlick, Ms. Murphy went toward Mr. Gavlick, but Defendant Ricardo Mantilla, who was in plain clothes but had his badge visibly around his neck, grabbed Ms. Murphy by her sweatshirt and forcefully threw her down.  When she did not hit the floor, however, Defendant Mantilla pulled her down to the ground by her arms and sweatshirt.

46.     When Ms. Murphy hit the floor, Defendant Mantilla put his knee in her back.  He then forcibly picked her up from the ground, slammed her against the wall, and rear-handcuffed her.

47.     As the defendants brutalized and falsely arrested Ms. Murphy and Mr. Gavlick, other NYPD officers arrested other individuals, including Derrick Taylor, whom Plaintiffs had never met before this incident.

48.     At no time whatsoever did Ms. Murphy possess, control, handle, touch, obtain, buy, or attempt to buy or obtain crack-cocaine or any other contraband.

49.     At no time whatsoever did Ms. Murphy throw to the ground any crack-cocaine or any other contraband.

50.     At no time whatsoever did Ms. Murphy flail her arms, twist her shoulders, or refuse to place her hands behind her back to avoid being handcuffed.

51.     At no time whatsoever did Ms. Murphy resist arrest in any way.

52.     Likewise, at no time whatsoever did Mr. Gavlick possess, control, handle, touch,

8

obtain, buy, or attempt to buy or obtain crack-cocaine or any other contraband.

53.    At no time whatsoever did Mr. Gavlick have crack-cocaine or any other contraband on his person.

54.    At no time whatsoever did Mr. Gavlick flail his arms, twist his body, or refuse to place his hands behind his back to avoid being handcuffed.

55.    At no time whatsoever did Mr. Gavlick resist arrest in any way.

56.    Despite lacking probable cause, reasonable suspicion, and having no justification whatsoever, the defendants placed plastic handcuffs on Plaintiffs' wrists, unlawfully arrested them, placed them in an NYPD vehicle, and transported them to an NYPD precinct stationhouse, where they remained unlawfully imprisoned.

57.    The defendants actively participated in falsely arresting Ms. Murphy and Mr. Gavlick and failed to intervene to prevent the defendants, including, but not limited to, the individually named defendants, from unlawfully assaulting and arresting Plaintiffs.

**DEFENDANTS VIOLATED MS. MURPHY WITH A HUMILIATING AND DEGRADING STRIP SEARCH**

58.    Upon transporting Plaintiffs to the NYPD precinct, the defendants placed Ms. Murphy in a jail cell with other female detainees, and placed Mr. Gavlick in another jail cell. The defendants, however, were not finished with Ms. Murphy.

59.    Shortly after depositing Ms. Murphy in a jail cell, Defendant Jane Doe 1, a female uniformed police officer, went to the jail cell and instructed Ms. Murphy to come with her to the bathroom to be strip searched.

60.    Upon placing Ms. Murphy in the bathroom, Defendant Jane Doe 1 ordered her to remove all of her clothes, including her underwear and bra.  Ms. Murphy complied with this patently illegal order and stripped completely naked.

61.    Defendant Jane Doe 1 then ordered Ms. Murphy to put her hands against the wall and spread her legs, which she did.  Defendant Jane Doe 1 then came behind Ms. Murphy, ran her fingers through Ms. Murphy's hair and ran her hands up and down Ms. Murphy's naked body, including forcibly lifting up Ms. Murphy's breasts.

62.    Completely naked, afraid, and falsely arrested, Ms. Murphy endured this gratuitous humiliation and invasive assault upon her dignity for minutes; and the entire time that Defendant Jane Doe 1 strip searched her, the bathroom door was open.

63.    Horrified and humiliated, Ms. Murphy observed two male police officers in plain clothes outside of the bathroom who had a clear view inside of the facilities while she was being strip searched.

64.    Indeed, the female detainees who were in the jail cell with Ms. Murphy prior to her being strip searched in the bathroom yelled out that what Defendant Jane Doe 1 did to Ms. Murphy "wasn't right."

65.    Defendant Jane Doe 1 then placed Ms. Murphy back in the jail cell.

66.    A few hours after being strip searched, the defendants moved Ms. Murphy to another jail cell, and eventually fingerprinted and photographed her.

67.    Thereafter, an officer gave her a voucher for her belongings, but the money that she had on her person prior to being arrested was not indicated on the voucher. When Ms. Murphy informed the officer that she had $32.00 on her when she was arrested, the officer told her that he did not know what she was about talking about.

68.    Upon processing Plaintiffs' arrest, the defendants rear-handcuffed them both and transported them to the Manhattan Detention Complex for further imprisonment.

69.    Upon arriving at the Manhattan Detention Complex, the defendants separated

Plaintiffs, and Ms. Murphy was again subjected to humiliation.

70.     Ms. Murphy was brought to a small jail cell and a female corrections officer ordered her to strip naked, get against the wall, and spread her legs.  Ms. Murphy again complied with this order, and the female corrections officer ran her hands through Ms. Murphy's hair and down her body.

71.     Upon the conclusion of this strip search, Ms. Murphy was permitted to get dressed and then brought to another jail cell for imprisonment until her arraignment.

72.     At some point thereafter, Ms. Murphy was brought before the New York County Criminal Court for arraignment on the baseless charges filed under docket number 2015NY072576.  These charges were filed upon the false allegations of Defendants Tatis and Mantilla.

73.     Likewise, while Ms. Murphy was being strip searched and imprisoned, Mr. Gavlick remained imprisoned in a jail cell in the Manhattan Detention Complex, where he remained unlawfully imprisoned until he was brought before the New York County Criminal Court for arraignment on the baseless charges filed under docket number 2015NY072575.  These charges were filed upon the false allegations of Defendants Tatis, Marku, Liz, and Undercover Police Officer 276.

74.     Defendants Tatis, Mantilla, Marku, Liz, and Undercover Police Officer 276 manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Plaintiffs at trial.

75.     On November 8, 2015, Ms. Murphy and Mr. Gavlick were arraigned on the false charges of resisting arrest and possession of a controlled substance in the seventh degree. Upon arraignment, the presiding Criminal Court judge released both Ms. Murphy and Mr. Gavlick on

their own recognizance.

76.     Prior to their release at arraignment, Ms. Murphy and Mr. Gavlick each spent approximately twenty-five (25) hours falsely imprisoned.

77.     The defendants arrested and initiated criminal proceedings against Ms. Murphy and Mr. Gavlick despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

**DEFENDANTS FLAKED PLAINTIFFS TO JUSTIFY THEIR FALSE ARREST**

78.     The defendants initiated this prosecution for the purpose of covering up their unlawful arrest of Ms. Murphy and Mr. Gavlick.

79.     To that end, the defendants colluded to justify their false arrest by "flaking" Mr. Gavlick, that is, planting crack-cocaine on him that they seized from another individual or other individuals whom they arrested.  See, e.g., NEW YORK CITY COMMISSION TO COMBAT POLICE CORRUPTION, "Fifteenth Annual Report of the Commission," September 2013, http://www.nyc.gov/html/ccpc/assets/downloads/pdf/15th_annual_report.pdf ("The term 'flaking' refers to planting evidence on suspects."); see also Joe Coscarelli, NYPD Officer Explains Faking Drug Arrests to Meet Quotas, NEW YORK, Oct. 31, 2011, http://nymag.com/daily/intelligencer/2011/10/nypd_officer_explains_faking_d.html ("A former detective cooperating with prosecutors detailed in court the practice of 'flaking,' or planting drugs on innocent people, which he admitted to doing in order to help a fellow officer whose buy-and-bust stats had been low.").

80.     Likewise, the defendants colluded to justify their false arrest of Ms. Murphy by claiming that they observed her throw crack-cocaine on the ground, and then flaking her by vouchering crack-cocaine that they seized from another individual or other individuals whom

they arrested in Ms. Murphy's name.

81.   This false arrest, malicious prosecution, and denial of Ms. Murphy's fair trial rights compelled her to return to the New York County Criminal Court from her home in Pennsylvania to face these false charges on at least two (2) occasions when, on February 11, 2016, the Criminal Court judge dismissed this malicious prosecution against Ms. Murphy outright.

82.   Similarly, this false arrest and denial of Mr. Gavlick's fair trial rights compelled him to return to the New York County Criminal Court from his home in Pennsylvania to face these false charges on at least two (2) occasions when, on February 11, 2016, upon the application of the District Attorney's Office, the presiding Criminal Court judge adjourned the case in contemplation of dismissal pursuant to New York Criminal Procedure Law § 170.55.

83.   All of the events leading up to and culminating in Ms. Murphy and Mr. Gavlick being falsely arrested and denied their fair trial rights occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

84.   All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

85.   This underlying false arrest, illegal strip search, denial of the right to fair trial, and malicious prosecution is not an isolated incident.  Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many

NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the legal basis required for stops and searches, what constitutes probable cause for an arrest, and that they repeatedly arrest completely innocent individuals on sham charges of resisting arrest and possession of a controlled substance and engage in falsification, including "flaking," to that end.

86.     Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights.  Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the defendants to violate Plaintiffs' civil rights.

87.     Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train, supervise, and discipline them.

88.     Indeed, Defendant CITY OF NEW YORK's notice is not limited to the plethora of complaints filed against it for its officers' unconstitutional behavior.  As the New York Daily News exposed, in late 2011, a corrupt NYPD narcotics detective, who testified at trial against another corrupt NYPD narcotics detective, was arrested and pleaded guilty to "planting cocaine, a practice known as 'flaking,' on four men in a Queens bar in 2008 to help out fellow cop Henry Tavarez, whose buy-and-bust activity had been low." John Marzulli, We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies, N.Y. DAILY NEWS, Oct. 13, 2011, http://www.nydailynews.com/news/crime/fabricated-drug-charges-innocent-people-meet-arrest-quotas-detective-testifies-article-1.963021.  In response to Supreme Court Justice

Gustin Reichbach's question – "'Did you observe with some frequency this . . . practice which is taking someone who was seemingly not guilty of a crime and laying the drugs on them?'" – the disgraced detective stated, "'Yes, multiple times.'"  Id.  The NYPD has and continues to have a problem with its narcotics detectives flaking completely innocent people, which is exactly what the defendants did to Ms. Murphy and Mr. Gavlick.

89.     As a result of the foregoing, Plaintiffs TINA MURPHY and MICHAEL GAVLICK have sustained, among other damages, mental injuries, physical injuries, emotional distress, embarrassment, humiliation, and deprivation of their constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

90.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "89" with the same force and effect as if fully set forth herein.

91.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

92.     All of the aforementioned acts deprived Plaintiffs TINA MURPHY and MICHAEL GAVLICK of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

93.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

94.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY

OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

95.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

96.     As a result, Plaintiffs TINA MURPHY and MICHAEL GAVLICK are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A SECOND CAUSE OF ACTION**
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

97.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "96" with the same force and effect as if fully set forth herein.

98.     The defendants arrested Plaintiffs TINA MURPHY and MICHAEL GAVLICK without probable cause or legal privilege, causing them to be detained against their will for an extended period of time and subjected to physical restraints.

99.     The defendants caused Plaintiffs TINA MURPHY and MICHAEL GAVLICK to be falsely arrested and unlawfully imprisoned, resulting in Plaintiffs being put in fear for their safety, humiliated, embarrassed, and deprived of their liberty.

100.     As a result, Plaintiffs TINA MURPHY and MICHAEL GAVLICK are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Illegal Strip Search under 42 U.S.C. § 1983)

101.    Plaintiff TINA MURPHY repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "100" with the same force and effect as if fully set forth herein.

102.    The defendants effectuated, ordered, and caused Plaintiff TINA MURPHY to strip naked, subjecting her to a strip search without probable cause, particularized suspicion, legal privilege, or reasonable suspicion that she was concealing weapons or other contraband.

103.    The defendants caused Plaintiff TINA MURPHY to be stripped searched twice, resulting in Plaintiff being put in fear for her safety, humiliated, embarrassed, afraid, deprived of her most basic dignity interests, and subjected to a highly degrading and intrusive search.

104.    As a result, Plaintiff TINA MURPHY is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Malicious Prosecution under 42 U.S.C. § 1983)

105.    Plaintiff TINA MURPHY repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "104" with the same force and effect as if fully set forth herein.

106.    The defendants initiated, commenced, and continued a malicious prosecution against Plaintiff TINA MURPHY.

107.    The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiff TINA MURPHY.

108.    The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecution.

109.    The defendants caused Plaintiff TINA MURPHY to be prosecuted without any probable cause until all of the charges against her were dismissed outright on February 11, 2016, resulting in a favorable termination for Plaintiff.

110.    As a result, Plaintiff TINA MURPHY is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

111.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "110" with the same force and effect as if fully set forth herein.

112.    The defendants falsified the information against Plaintiffs TINA MURPHY and MICHAEL GAVLICK likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiffs.

113.    The defendants caused Plaintiff TINA MURPHY to be prosecuted without probable cause and upon the false information that they submitted to the District Attorney's Office until the underlying prosecution and charges against her were dismissed outright on February 11, 2016.

114.    The defendants caused Plaintiff MICHAEL GAVLICK to be prosecuted without probable cause and upon the false information that they submitted to the District Attorney's

Office until the underlying prosecution was adjourned in contemplation of dismissal on February 11, 2016.

115.    As a result, Plaintiffs TINA MURPHY and MICHAEL GAVLICK are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

116.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if fully set forth herein.

117.    The defendants had an affirmative duty to intervene on behalf of Plaintiffs TINA MURPHY and MICHAEL GAVLICK, whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

118.    The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

119.    As a result of the defendants' conduct, Plaintiff TINA MURPHY was subjected to false arrest; illegal strip search; malicious prosecution; denial of her right to a fair trial; her liberty was restricted for an extended period of time; she was put in fear for her safety; and she was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

120.    As a result of the defendants' conduct, Plaintiff MICHAEL GAVLICK was subjected to false arrest; denial of his right to a fair trial; his liberty was restricted for an

extended period of time; he was put in fear for his safety; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

121.     As a result, Plaintiffs TINA MURPHY and MICHAEL GAVLICK are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

122.     All of the foregoing acts of the defendants deprived Plaintiffs TINA MURPHY and MICHAEL GAVLICK of federally protected rights, including, but not limited to, the right:

        A.      To be free from deprivation of civil rights and liberty;

        B.      To be free from false arrest/unlawful imprisonment;

        C.      To be free from illegal strip search;

        D.      To be free from malicious prosecution;

        E.      To be free from denial of fair trial rights; and

        F.      To be free from the failure to intervene.

123.     As a result, Plaintiffs TINA MURPHY and MICHAEL GAVLICK are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs TINA MURPHY and MICHAEL GAVLICK demand judgment and pray for the following relief, jointly and severally, against the defendants:

(A)     full and fair compensatory damages in an amount to be determined by a jury;

(B)     punitive damages against the individual defendants in an amount to be determined by a jury;

(C)     reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as the Court deems just and proper.

**Dated:** New York, New York
July 14, 2016

Respectfully submitted,

**THE TRAINOR LAW FIRM, P.C.**
26 Broadway, Suite 2100
New York, New York 10004
Tel:  (212) 323-7410
Fax: (212) 323-7411

By:     *Craig Trainor*
CRAIG TRAINOR (CT 1823)

Attorney for Plaintiffs TINA MURPHY and
MICHAEL GAVLICK

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TINA MURPHY and MICHAEL GAVLICK,

                              Plaintiffs,

             -against-

CITY OF NEW YORK, RICARDO MANTILLA, Individually, SANTOS LIZ, Individually, VISAR MARKU, Individually, RAFAEL TATIS, Individually, UNDERCOVER POLICE OFFICER 276, Individually, and JOHN DOE 1 through 2, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                              Defendants.

---

                          16-CV-5615

# COMPLAINT

**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004